JACK DEMPSEY'S PUNCH BOWL, INC., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15153. Promulgated December 15, 1948.

*T. Newman Lawler, Esq.*, for the petitioner.
*Thomas R. Wickersham, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: Respondent contends that $12,000 of the $36,724.72 paid by petitioner to Dempsey in 1942 was excessive and on that account not deductible by it for tax purposes. Petitioner, on the other hand, argues that the total amount given to Dempsey in 1942 constitutes a reasonable payment for the use of his name and for his services. We agree with petitioner that the payment in question is deductible as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code.

As petitioner has pointed out, Dempsey's compensation from petitioner during the year involved, although it was designated as salary, was both for the right to use his name and for the services he performed in putting in his appearance at the restaurant. There can be no question that petitioner would not have enjoyed anywhere near the success it did without the use of his name and his services. The evidence shows that the people who came to New York in 1942, as well as in previous years, sought out petitioner's restaurant in the hope of seeing Jack Dempsey. Harry S. Gerstein, who has been associated with many of Broadway's famous restaurants and night clubs as executive secretary of the Allied Restaurant & Entertainment Industry of New York since 1938, testified as follows:

A. I would like to say from my estimation that Dempsey's is a unique type of operation in so far as Dempsey himself is the drawing card there. Without Dempsey it would be an ordinary restaurant.

On cross-examination he further testified as follows:

* * * After the war started in December of 1941 we had in New York City an influx of uniformed and nonuniformed people gathered here, and the hue and cry up and down Broadway was Dempsey's, Dempsey's, Dempsey's.

As a matter of fact, a lot of the restaurant people complained Dempsey was doing all the business in the early part of the war, 1942.

The payments made to Dempsey by petitioner during 1942 were not disproportionate to compensation he has received from other sources for the use of his name and for his services. He has received from $750 to $10,000 a night for refereeing prize fights. He received $25,000 for the use of his name in connection with McKesson & Robbins' whiskey. He has been paid from $1,500 to $2,000 for radio appearances. These facts, we believe, lend strong support to petitioner's contention that the $36,724.72 which it paid to Dempsey during 1942 for the use of his name and for his services was reasonable.

There can be no doubt that the payment was agreed upon in an arm's length transaction. The facts show that there was a sharp disagreement among the board members as to what the compensation of Amron, Brooks, and Dempsey should be. The question of payments was finally referred to a special resolutions committee for action. Out of this committee came, among other things, the recommendation that payments made to Dempsey should be increased by $12,000 in 1942, which recommendation was approved by the board of directors. The above, together with the fact that petitioner in 1942 declared a dividend of $100 for each share of stock, is compelling evidence that the payment in question was not a guised distribution of profit.

Respondent points out that Dempsey did not receive permission from the proper authorities in the Navy Department to appear in petitioner's restaurant after receiving his commission from the United States Coast Guard. From this fact he states "a serious question of public policy is presented as to whether the payments should be recognized for tax purposes even if otherwise allowable." He cited no authority for this statement and we have been unable to find any valid reason to support respondent's suggestion. The facts show that Dempsey's appearances at petitioner's restaurant had the approval of his immediate superior officers; indeed, they accompanied him there on several occasions. Respondent, however, says this is not enough, that he should have had the approval of the chief of the Bureau of Naval Personnel. We believe the effect of respondent's argument is an attempt to have this tribunal enforce naval regulations, which function, of course, is not vested in this Court.

In view of all the circumstances of this case, we conclude that the entire amount paid to Dempsey during 1942 as compensation was reasonable in amount for services actually rendered and that such compensation, together with the amounts paid for the use of his name, constituted ordinary and necessary business expenses, and are deductible for tax purposes. It follows that respondent erred in his determination.

*Decision will be entered under Rule 50.*